MICHAEL SCHALLER vs. STATE OF MISSOURI.

1. Drunkenness is no excuse for crime.

2. It is wrong to instruct a jury that "the want of motive or interest to swear false is a circumstance from which they are at liberty to infer that the testimony of the defendant was not wilfully and corruptly false." The secret motives which give birth to acts are not always susceptible of proof.

3. Good character is a circumstance, but not "a strong circumstance," in favor of the accused.

Schaller vs. State of Missouri.

## APPEAL from St. Louis Criminal Court.

BLENNERHASSETT, for appellant.

The second instruction moved by defendant, and which the court below refused to give, brings up a question of jurisdiction. The bill or account in evidence, was clearly beyond the jurisdiction of the justice. Did the words "voluntary credit 77 cts." give jurisdiction? To do so, they must act as a release. They must utterly prevent said Nelson from even recovering said "77 cts." if he sued for them, and they were justly due, (according to the British authorities quoted below, a release to escape a jurisdiction might perhaps not avail.)

It would present a different case, if said Nelson had apparently sued for a sum within the jurisdiction of the court. The law then, perhaps, might have cast him out of his balance.

The proceedings against Schaller are unavailing if the proceedings before the justice were *corum non judice.*

The voluntary credit of 77 cts., if available to take away the jurisdiction of the higher court opens a new field of law. If it extinguishes the demand of 77 cts., how does it do it? By what operation of law does it effect that object? If the demand of 77 cts. was afterwards sued on and proved, what would be the difference against it?

The statement that it is a voluntary credit, is not a release, a gift and accord and satisfaction. The law has appointed modes by which a man may divest himself of his rights and credits; but the plaintiff, before the justice, did not adopt any of these modes. If he extinguished the 77 cts., without using such modes, he has invented a new conveyance. A bill filed before a justice is a statement of a claim. The party before Schaller, stated a claim larger than Schaller's jurisdiction; but then went on (in effect) to state, that said claim was reduced by a credit voluntarily given, which means, (and it can mean nothing else,) but that the party plaintiff, before the justice, took off 77 cts. to bring the cause within the justice's jurisdiction. Is it necessary that the 77 cents should be really, and effectually taken off? It is not contended but that possibly, on proof, it might appear that there was a release for the 77 cts.; but, does it mean that? It is an effort to oust the superior courts of their jurisdiction, and unless such a statement does operate as as a release, the party is liable to be sued again, and so the provision against a multiplicity of suits are evaded; and higher tribunals ousted of their jurisdiction.

The absence of jurisdiction here, appears on the face of the proceedings.

In the 40 shilling courts, (justices' courts) an entire debt, exceeding 40 shillings, cannot be split, so as to be sued for in this court; nor can the creditor falsely acknowledge satisfaction of a part, so as to proceed for the rest. 2nd, 312 John.; 564 Com. Dig: county O. S.; 2 Rol. a. 312 pl. 1; 3rd Blk. Com. note 2 to p. 35.

As to the facts in the case, it presents another question of interest, to be gathered from the circumstances and motives.

Schaller swore before the grand jury, that Nelson was a witness in the case before him; he came next day before the same body, and swore that Nelson was not a witness, and the latter statement is corroborated by a writing executed by him in the interval. Suppose a man should be called as a witness in open court, and should as such witness give a statement of certain facts, and before the trial terminated, should voluntarily take the witness's stand, and admitting his first mistake, should swear entirely different from what he did in the first instance; would either of those statements be so false as to be subject to perjury? And what is the difference between the case put, and Schaller's case? Schaller was a magistrate, having so far as the record discloses any thing, no motive whatever to lie; and, if we are to indulge in presumptions at all, he appears in his second statement (contradicting the first) to have regarded himself as mistaken in the testimony which he first gave, and voluntarily correcting it.

LACKLAND, for the State.

The court in the first instruction given, declares what were material questions before the grand jury. This is a question of law, and it is proper for the court to present it to the jury by instructions. Stevenson vs. McWilliams, 6 Barr, 170; Annual Digest of 1848. page 48, 299.

The second instruction informs the jury that if they believe that defendant wilfully, knowingly, corruptly, falsely, &c., swore to matter material as alleged in said indictment, or swore as aforesaid to such matter, when he did not know it was true or false, they ought to find him guilty; (i. e.) If one positively, absolutely and corruptly swear to a matter that he does not know to be true, he is guilty of perjury, and in such case it makes no difference, whether the matter be true or false. Wheaton's Crim. L., 473; 1 Hawk. C., 69, sec. 6; 3 Just., 166; 1 Palmer 294; Com. vs. Halstat, 2 Boston L. Rep., 177.

The evidence is sufficient to warrant the finding of the jury, and therefore the court did not err in refusing to grant a new trial on that ground.

The defendant was summoned before the grand jury, and there testified to certain facts, as having been done by himself and others. His oath is contradicted by one witness, and he made admissions in writing, inconsistent with his oath. This is sufficient. That is, the direct oath of one witness, and the declaration of the prisoner, inconsistent with the oath in which perjury is assigned; is sufficient to convict. State vs. Mober, 1 Dev. 262; Prosc. Crim. Ev., 834; 1 Greenl. Ev., sec. 257 and following, 6 Car. & Payne, 315.

The motion in arrest ought not to have been sustained; the indictment is sufficient, and the court, therefore, did not err in overruling the motion.

The first instruction asked for by defendant was properly refused. It, in substance, states, that in the absence of an apparent motive, the jury may infer the absence of corruption. This is not good law. If the jury are satisfied that defendant committed willful and corrupt perjury, they need not go farther to enquire for a motive.

In the last instruction refused, the defendant asked the court to tell the jury, that the proof of good character is a strong circumstance in favor of his innocense. This is not good law. If the case be clearly proven, character is no defence. In doubtful cases it is admissible, but even in those cases of doubt, it would be error for the court to tell the jury that it was a strong circumstance; because the strength of the circumstance is alone to be passed upon by the jury; and the court in telling the jury so, would be passing upon the weight of evidence. At the instance of the State, the court instructed the jury what they must find to convict the defendant, and told them, if they had a rational doubt of things necessary to be found, they must acquit.

This is in effect giving the other instructions asked for by defendant, which were refused. It was not necessary for the court, at the instance of the defendant, merely to reverse the proposition of law given at the instance of the State, which is the substance of the instructions refused, except the first and the last.

RYLAND, J., delivered the opinion of the court.

The appellant was indicted in the St. Louis criminal court at the January term, 1850, for the crime of perjury.

Michael Schaller, the appellant in this court, was a justice of the peace, within and for the county and city of St. Louis; one T. S. N., brought suit before said Schaller as a justice of the peace against one Nicholas Patton on an open account for $90. The account filed was

for $90 77 cents, with a "voluntary credit of 77 cents," leaving the amount due $90. On this account judgment by default was rendered against Patton; and the justice gave the final judgment for N. for the ninety dollars and costs of suit.

At the January term, 1850, of the St. Louis criminal court, the grand jury were engaged in the examination and investigation of a charge of perjury against said T. S. N., alleged to have been committed by him, on the trial of the said suit before Schaller, in which he was plaintiff, and Patton defendant on the account filed as above.

Before the grand jury, while engaged in the investigation of the said charge of perjury against said N., the appellant was introduced and duly sworn as a witness on said enquiry, and it was material to the enquiry to find out whether said N. had been sworn and examined as a witness before said justice Schaller on the trial of the suit before him of said N. vs. said Patton. Upon the examination of said Schaller, therefore, as a witness by the grand jury, he was asked whether he, as a justice of the peace on the trial of the suit before him of N. against Patton did swear the said N. to testify in said cause in the absence of said Patton, and whether said N., did not testify on said trial, that said account was correct, and due to him by said Patton; and whether he did not testify that said account, item by item was correct and due by said Patton to him, N.; and whether he, said Schaller as justice of the peace, as aforesaid, did not render the judgment in favor of N. against Patton alone on the testimony given before him on the trial in the absence of said Patton, by said N.; and that there was no other evidence adduced.

And the said Schaller did swear and testify before said grand jury on the enquiry against said N. before them for the crime of perjury aforesaid, that he as a justice of the peace, holding his court on the trial of the cause before him of N. vs. Patton on the open account filed by N., did swear said N. to testify as a witness in said cause, and that said N., as such witness in the absence of said Patton, did testify that said account was correct and due to him by said Patton; and that said account, item by item was correct, and due to him, and that there was no other evidence given before him on said trial of the suit in favor of N. against Patton, and that he rendered judgment in favor of said N. on the evidence of N. alone.

The perjury consists in this statement of the witness Schaller, for the indictment avers and the testimony shows the fact to be that said N. was not sworn nor examined as a witness on the trial of the cause before said Schaller.

After the appellant had thus sworn to the above facts before the grand jury, he made a written statement, that said N. was not sworn as a witness nor examined as a witness on the trial of the suit against Patton; and that he rendered judgment in said cause on documentary evidence consisting of a receipt of said Patton for the 18th item in the said account, and of accounts in writing of N. against Patton for the balance.

Afterwards the appellant appeared again before the grand jury, that is after his first examination before that body and after his written statements, contradicting his oath before them, had been produced to them, and stated to said grand jury (but it does not appear whether he was re-sworn or not at the time) that, he had not sworn N. or any other witness in said cause, and that he rendered judgment upon documentary evidence alone. It was testified by one Mathias, that no witness was sworn on the trial before the said Schaller, but that N. handed appellant some papers which he looked at, and appellant then remarked, "You have judgment Mr. N.," and appellant then handed the papers back to N.

It was proved, that the defendant was a German, a man of good education, understood the English language and had been in the habit of drinking intemperately. The facts of the trial, testifying official character and all the material facts were proved as alleged in the indictment. It was also proved that when before the grand jury, the appellant was cool and collected and not under the influence of liquor. The jury found the defendant guilty and assessed his punishment to two years imprisonment in the penitentiary. He moved for a new trial— motion was overruled—the defendant excepted and brings the case here by appeal.

As the defendant's counsel relies principally, on the account filed by N. against Patton for a reversal of this case, because he contends that, that account excuses the jurisdiction of a justice of the peace, and that N. could not, therefore, if he had been sworn, be guilty of any offence, for the whole proceedings were "*coram non judice.*" I will here copy the account as it appears in the bill of exceptions:

"NICHOLAS PATTON To T. S. N.,                                    Dr.
"To cash paid Patton on the 4th day of December, 1845,
 $30, of which he allowed but the sum of $5 00 as a credit,
 leaving a balance due........ ...................... $25 00
Interest on same to 24th day of September, 1849............ 5 62½
To professional services in search of hire in 1846.......... 5 00
To hire of cart and horse and man three days at $2 ......... 6 00

Schaller vs. State of Missouri.

To balance of and from $10, due after paying for hardware..... 1 50
To 12,000 brick, sold and delivered at $4 per 1000 in 1845–6, 48 00

$90 77½
Voluntary credit......... ...................... 77

Due.................................................. $90 00½

The counsel contends that the voluntary credit is no release and consequently, that the account exceeds the jurisdiction of a justice of the peace, and that all the acts of said justice are void for want of jurisdiction. That N. could not have been guilty of perjury if he had been examined before the justice on the trial of this account and consequently Schaller could not be guilty in testifying before the grand jury in regard to N.'s testimony in this cause before the justice.

To this I have one plain, and to my mind, conclusive answer. In casting up the account, I find it amounts to $91 12 1-2. The voluntary credit of the seventy-seven cents, therefore, does not reduce it to $90, and if there be no other answer to the counsel's argument, than such reduction it must prevail.

Let us examine this subject, and 1st, justices courts, sec. 2, Digest of 1845, page 634: "Every justice of the peace shall have jurisdiction over the following actions and proceedings: First. Actions of debt covenant and assumpsit, all other actions founded upon contract, when the debt or balance due, or damages claimed, *exclusive* of interest, shall not exceed ninety dollars," &c.

In viewing the above account in regard to jurisdiction of the justice of the peace, we must not include in the amount the second item, that is for interest on the first item, amounts to the sum of five dollars sixty-two and a half cents—deduct this sum from the account and it leaves the sum of $85 50, fully within the jurisdiction. The ninety dollars exclusive of interest must be regarded as forming the criterion in regard to jurisdiction, and the first item in the above account is justly entitled to interest, without stating the amount of that interest; so then the interest item deducted, leaves the account fully within the jurisdiction. This view of the subject completely overturns the argument, and the principal argument relied on for reversing the judgment below.

The naked question of interest, of wilful and corrupt false swearing, was left, under proper instructions, to the jury. The court instructed the jury as to what were material questions, brought the subject of rational doubt to their minds. The jury found the defendant guilty.

It is true there is nothing on the record in this case pointing out any

---

motive or any interest the defendant Schaller could have to commit the crime of perjury in this transaction, yet there is ample proof of his swearing to the existence of stubborn facts, that did not exist. How such conduct is reconcilable with common sense, and the common cause of human action is to me not apparent. Did the habit of gross intemperance have any hand in producing this effect? Can the conduct of the defendant even find palliation in this most deplorable habit? Drunkenness is no excuse for crime.

I have carefully examined the instructions given and refused. The first instruction refused for the defendant, was, in my opinion, properly refused.

This instruction embraces the proposition that the "want of motive or interest in Schaller to swear false is a circumstance from which the jury are at liberty to infer that the testimony of the defendant was not wilfully and corruptly false."

It may be very possible for motives to exist, prompting acts, when there is no evidence of their existence, before the jury. The secret promptings of the mind, the secret motives which give birth to acts and deeds are not always susceptible of human proof.

The last instruction declares that in all doubtful cases of guilt, general good character is to be regarded as a strong circumstance in favor of the accused. This instruction is technically wrong and the bare refusal to give it in this language is no error—I should have been better satisfied if the court had given this instruction amended by striking out the word "strong."

The substance of the other instructions were already embraced in those given on the part of the State—nothing wrong, therefore, in the court's refusal to give them again.

Upon the whole record I find nothing requiring the interference of this court with the judgment below. The same is, therefore, affirmed.